October 24, 2025



The Honorable Joseph A. Marutollo
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: Hume v. AMRK Enterprises, Inc., 25‑cv‑4527 Plaintiff's response to pre‑motion letter**

Dear Judge Marutollo:

**Plaintiff's position under the Court's Individual Rules.** I do not intend to amend as of right at this time. If the Court desires additional technical detail as to Count I (47 U.S.C. § 227(b)), I would seek leave to amend after limited discovery. Otherwise, I am prepared to proceed to briefing on Defendant's contemplated motion.

## Introduction

AMRK asks the Court to hold, as a matter of law, that telemarketing text messages to a number listed on the National Do‑Not‑Call ("DNC") Registry are not actionable under 47 U.S.C. § 227(c), and to dismiss my internal‑DNC claim (47 C.F.R. § 64.1200(d)) and § 227(b) claim at the threshold. The Complaint alleges 34 marketing texts to my DNC‑listed personal number, after ten opt‑out replies, without required sender identification and without compliant internal DNC procedures. Post‑*Loper/McKesson* decisions reject AMRK's theory and recognize that DNC‑governed telephone solicitations include texts. Internal‑DNC duties are fact‑bound and should proceed.

## I. § 227(c) applies to text solicitations

**Text and structure.** Congress empowered the FCC to restrict telephone solicitations to DNC‑listed numbers, 47 U.S.C. § 227(c). The operative definition is directly on point: a "telephone solicitation" means initiating a telephone "call or message." 47 C.F.R. § 64.1200(f)(15). That text squarely fits SMS campaigns to DNC‑listed subscribers.

Courts applying ordinary statutory tools, not agency deference, consistently hold that § 227(c) reaches text solicitations. For example:

• **Wilson v. Skopos Financial, LLC** (D. Or. 2025):

"On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5)."

And "it cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry," and "as technology has developed over the years, so too has our understanding of the TCPA's protections."

The court also found the defendant's argument that the FCC lacked authority to treat text messages as 'calls' under the TCPA "undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance." The court added that the FCC's expansion of the TCPA to include text messages was "congruent with Congress's overarching goals for the TCPA."

• **Wilson v. Medvidi, Inc.** (N.D. Cal. 2025):

"In short, nothing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications that Defendant urges…. The Court concludes that a 'telephone call' as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of."

The court described the same argument AMRK makes here, that because the FCC expressly mentioned texts in § 64.1200(a), but not in § 64.1200(c), Congress meant to exclude texts from § 227(c). "This tortured reasoning provides no basis to depart from the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage."

• **Bosley v. A Bradley Hospitality LLC** (S.D. Fla. 2025): denied dismissal of § 227(c) and § 64.1200(d) claims arising from repeated text solicitations to a DNC-listed number; recognized standing for unwanted texts and applied modern opt-out principles.

**Distinguishing AMRK's contrary authorities.** AMRK leans on *Jones v. Blackstone* and *Davis v. CVS*, which read "telephone call" in § 227(c)(5) to exclude texts. Those out-of-circuit decisions give short shrift to the "call or message" definition that governs telephone solicitations, and they sit against the weight of the above post-*Loper/McKesson* decisions that analyze the statute and rules on their own terms and still conclude that texts are covered for § 227(c).

**Note on *McLaughlin/Loper*.** The Supreme Court confirmed that district courts are not bound by FCC interpretations via Chevron/Hobbs Act; courts independently construe the TCPA. But those

same cases say prior precedents remain intact. The point here is simple: using ordinary interpretation, courts continue to read § 227(c) to cover text-based telephone solicitations—no deference needed.

## II. The § 64.1200(d) internal-DNC claim is well-pled and fact-intensive

The internal-DNC rule requires written policies, training, recording and honoring of do-not-call requests, and compliance with identification/opt-out handling. 47 C.F.R. § 64.1200(d). I alleged ten opt-out replies that were ignored; failure to identify the sender; and lack of compliant internal DNC procedures. Whether AMRK actually maintained and honored a compliant internal policy (training, capture/scrub of revocations, honoring requests) is fact-bound and not suitable for dismissal, precisely why courts allow these claims to proceed on materially similar allegations.

## III. Standing (independent ground to deny dismissal)

Repeated, unwanted telemarketing texts to a personal, DNC-listed number—especially after opt-out requests—inflict concrete privacy and time-wasting injuries that courts consistently recognize as sufficient for standing.

## IV. § 227(b) (ATDS/prerecorded) — if more detail is desired, the remedy is leave to amend

AMRK says the § 227(b) claim is too barebones because the Complaint uses the term "automated." Mass-text campaigns are commonly pleaded via commonsense indicators (volume, uniformity, opt-out handling), then refined with discovery (platform logs, campaign rules, any prerecorded components). If the Court wants additional particulars, I respectfully request leave to amend after targeted discovery into: (i) message/campaign logs; (ii) opt-out capture and suppression; (iii) any prerecorded/artificial-voice elements; and (iv) internal/vendor policies.

## Requested disposition

For these reasons, the Court should decline to grant leave for Defendant's proposed motion to dismiss. In the alternative—if the Court sets briefing or treats the letters as the motion: (1) hold that the § 227(c) (National DNC) and § 64.1200(d) (internal DNC) claims may proceed; (2) allow targeted discovery on messaging/DNC compliance before dispositive briefing; and (3) grant leave to amend the § 227(b) count if the Court desires additional technical detail.

Respectfully submitted,

/s/ Justin Hume
Plaintiff | 2315 Forest Ave, Austin, TX 78704 | (785) 218-6286 | hume.tcpacase@gmail.com